UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNION MUTUAL FIRE INSURANCE COMPANY,

                *Plaintiff,*

– against –

MOSHE MOSKOVICS,

                *Defendant.*

**MEMORANDUM & ORDER**
23-cv-03135 (NCM) (TAM)

---

**NATASHA C. MERLE**, United States District Judge:

      Before the Court is plaintiff Union Mutual Fire Insurance Company's ("Union Mutual") motion for summary judgment, ECF No. 32 (the "Motion").[1] Plaintiff Union Mutual brings this action seeking declarations that certain policies issued to defendant Moshe Moskovics are void because defendant made material misrepresentations on his annual renewal applications, and therefore plaintiff need not defend or indemnify him in a personal injury action currently proceeding in New York state court. Defendant contends that he did not submit renewal applications and therefore made no such misrepresentations. For the reasons stated herein, the Motion is **GRANTED in part**, **DENIED in part**.

### BACKGROUND

      Plaintiff Union Mutual employs Roundhill Express LLC ("Roundhill") as its third-party claims administrator and authorized agent for all "commercial insurance policies

---

[1] The Court hereinafter refers to defendant's response to the Motion, ECF No. 33, as the "Opposition" and plaintiff's reply in support of the Motion, ECF No. 34, as the "Reply."

1

issued by Union Mutual in New York State." Def.'s Local Civ. R. 56.1 Counter-Statement of Undisputed Material Facts ¶ 1, ECF No. 33-1 ("56.1 Statement").[2] Roundhill employs a web-based platform to accept applications from commercial customers. Lambert Decl. ¶ 15, ECF No. 32-3. The software powering the platform will not "quote or bind coverage" for an application containing an "unacceptable risk" as defined by Union Mutual's Underwriting Guidelines for the Roundhill New York Habitational Program (the "Underwriting Guidelines"). 56.1 Statement ¶¶ 2–5, Lambert Decl. ¶¶ 13–14, 16. One such "unacceptable risk" is an affirmative answer "to any Preliminary Application Questions listed on the Roundhill Express Website from time to time." 56.1 Statement ¶ 3 (quoting Lambert Decl. ¶ 16); *see also* Underwriting Guidelines 2, ECF No. 32-4.

The Roundhill website and application include the following as a preliminary question: "Are there any outstanding [New York City Department of Housing Preservation and Development ("HPD")] Class C violations of fire, safety, health, environmental, building or constructions codes at the proposed risk location? (Or similar violations for risks outside of NYC)" (the "HPD Question"). 56.1 Statement ¶ 6; Lambert Decl. ¶¶ 18–19; Lambert Dep. Tr. 36:2–13, ECF No. 33-5. If an applicant answers the HPD Question in the affirmative, the Roundhill platform "will block a policy quote from issuing and will not continue to the next step of the underwriting process." Lambert Decl. ¶¶ 19–20; *see also* 56.1 Statement ¶ 7; Lambert Dep. Tr. 20:13–22:25.

In March 2017, Moskovics completed a Union Mutual commercial insurance application via the Roundhill platform for a property located at 909 Belmont Avenue in Brooklyn, New York (the "Belmont Property"). 56.1 Statement ¶¶ 8–9; Lambert Decl. ¶ 21.

---

[2]   The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

On that application, Moskovics answered "No" to the HPD Question. 56.1 Statement ¶¶ 10–11; Lambert Decl. ¶¶ 23–24. The parties agree that there were no outstanding class C violations from HPD at that time. Moskovics Decl. ¶ 5, ECF No. 33-3; *see* Reply 4 (noting that "from November 20, 2018 onward there were outstanding HPD Class C Violations on the insured premises"). Moskovics completed the application, which included multiple representations that he certified, affirmed, and understood that the information was accurate and would be used to secure an insurance policy from Union Mutual. 56.1 Statement ¶¶ 12–16; Lambert Decl. ¶¶ 25–28. Based on Moskovics' application, Union Mutual issued an insurance policy covering the Belmont Property from March 2017 to March 2018 (the "Initial Policy"). 56.1 Statement ¶ 17; Lambert Decl. ¶¶ 29–32.

The Initial Policy was renewed each year, including from March 2019–2020, March 2020–2021, and March 2021–2022 (each, a "Renewal Policy," and collectively, the "Renewal Policies").³ 56.1 Statement ¶ 18; Lambert Decl. ¶ 33; *see also* Moskovics Decl. ¶ 4. Roundhill sent "[e]ach policy renewal application and policy" to Moskovics by electronic mail to the email address "identified on the original application as the recipient of all communications and records from Roundhill." 56.1 Statement ¶ 26. The email address identified on Moskovics' March 2017 application belongs to his insurance broker, Silberstein Insurance Brokerage LLC ("Silberstein"). 56.1 Statement ¶ 26. The e-mails Roundhill sent to Silberstein included a cover letter with the following instructions: "Please review the attached renewal policy and application with your insured and note that the policy has been renewed based upon the answers to the application questions set

---

³ Because the record indicates that the HPD Violations occurred between November 2018 and June 2021, only the policy renewals occurring during that time are at issue in the parties' current dispute.

3

forth in the application. Those answers reflect information previously provided to us by the insured. If there are any changes, please let us know immediately as it will affect the coverage afforded by this policy of insurance." 56.1 Statement ¶ 26; Renewal Emails, ECF No. 32-10.

According to plaintiff, Moskovics answered "No" to the HPD Question on each renewal application. 56.1 Statement ¶¶ 23, 25; Lambert Decl. ¶¶ 34–35. However, according to defendant, he was only asked the HPD Question "the first time," on the March 2017 application, "[b]ut the later years was automatically renewed every year" without any "renewal application" signed by Moskovics. Moskovics Dep. Tr. 55:8–21, ECF No. 32-14; Moskovics Decl. ¶¶ 6–7.

During one of the Renewal Policy coverage periods, two individuals commenced a personal injury lawsuit captioned *Janet Serrano and Abel Rivera against Moshe Moskovics*, in the Supreme Court of the State of New York, County of Bronx (Index No. 812456/2021E) (the "Underlying Action"). 56.1 Statement ¶ 30. The Underlying Action alleges injuries related to a June 2021 slip and fall incident at the Belmont Property, which is owned by Moskovics and insured by the Policies. 56.1 Statement ¶¶ 9, 30; Moskovics Dep. Tr. 12:4–11, 16:16–18.

The HPD issued a total of 18 class C violations for the Belmont Property between November 2018 and June 2021 (the "HPD Violations"). 56.1 Statement ¶¶ 19, 21; Lambert Decl. ¶ 42. Defendant does not dispute that, for example, there were open class C violations at the Belmont Property when the Renewal Policies were renewed in January 2020 and February 2021. Moskovics Dep. Tr. 81:14–17; 82:4–11. According to defendant, he only learned of the HPD Violations at the Belmont Property after receiving notice of the Underlying Action. Moskovics Dep. Tr. 57:17–25. Moskovics did not notify Roundhill,

4

Union Mutual, or Silberstein of the HPD Violations. 56.1 Statement ¶ 27; Moskovics Dep. Tr. 58:8–16.

Pursuant to the Renewal Policies, Union Mutual assigned a law firm to defend Moskovics in the Underlying Action. 56.1 Statement ¶ 31; Lambert Decl. ¶ 40. During its subsequent investigation of the claims in the Underlying Action, Union Mutual learned of the HPD Violations. Lambert Decl. ¶¶ 42–43. Specifically, Union Mutual "determined that there were outstanding HPD Class C violations at the Premises at the time the applications for insurance were completed for the" Renewal Policies. Lambert Decl. ¶ 44. Union Mutual then issued a Disclaimer of Coverage and Notice of Rescission to Moskovics "based on [his] material misrepresentation on his applications for insurance regarding outstanding HPD Class C violations at the Premises." 56.1 Statement ¶ 32; Lambert Decl. ¶¶ 45–46.

According to the president of Roundhill, "if Moskovics had provided Roundhill and Union Mutual with the true fact that there were outstanding HPD Class C violations at the Premises, Union Mutual would have never issued the policies that it issued to Moskovics." Lambert Decl. ¶ 12; *see also* 56.1 Statement ¶ 29.

Union Mutual filed this action seeking three declarations: (i) the Union Mutual Renewal Policies issued to Moskovics for March 2019–2021 are void *ab initio* pursuant to Insurance Law § 3105; (ii) Union Mutual has no obligation to defend or indemnify Moskovics, or anyone else, for the Underlying Incident, the Underlying Action, or any other occurrence, claim, or suit under the Renewal Policies issued to Moskovics; and (iii) Union Mutual may withdraw from the defense of Moskovics in the Underlying Action. Mot 9.

## DISCUSSION

A party moving for summary judgment must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On review of a Rule 56 motion, the Court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024) (citing *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)).[4]

The initial burden rests with the movant to demonstrate an absence of material and genuine factual disputes. *Singletary v. Russo*, 377 F. Supp. 3d 175, 183–84 (E.D.N.Y. 2019). If that burden is satisfied, the non-moving party must then point to evidence demonstrating that a material fact is indeed in dispute. *Laurent v. Edwin*, 528 F. Supp. 3d 69, 83 (E.D.N.Y. 2021) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). The Court need only consider admissible evidence, and it need not leave every evidentiary stone turned. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

Through the Declaratory Judgment Act (the "DJA"), Congress provided federal courts with jurisdiction to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). "In other words, the DJA creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either

---

[4] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

6

party may seek a coercive remedy." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023). Legal disputes over insurance coverage have "become the paradigm" for courts asserting DJA jurisdiction. *Id.* at 92–93.

Federal courts sitting in diversity apply the substantive law of the forum state. *Burt Rigid Box, Inc. v. Traveler's Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).

## I.     Insurance Law § 3105

Pursuant to New York law, "an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008); *see also* N.Y. Ins. Law § 3105; *Am. Empire Surplus Lines Ins. Co. v. ZNKO Constr., Inc.*, 186 N.Y.S.3d 69, 70–71 (2d Dep't 2023). A material misrepresentation voids the policy *ab initio*—from its inception. *Nabatov v. Union Mut. Fire Ins. Co.*, 164 N.Y.S.3d 667, 670 (2d Dep't 2022); *see also Broder v. Pallotta & Assocs. Dev., Inc.*, 130 N.Y.S.3d 75, 79 (2d Dep't 2020) ("The effect of rescission is to declare the contract void from its inception and to put or restore the parties to status quo."). This is so "even if" the misrepresentation was "innocent or unintentional." *Nabatov*, 164 N.Y.S.3d at 670.

Misrepresentations include a "failure to disclose" and a "false affirmative statement." *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 236 (E.D.N.Y. 2008). Material misrepresentations are those which "induced" an insurer "to accept an application that it might otherwise have refused." *Id.* The burden rests with the insurer to demonstrate "both that there has been a misrepresentation and that the misrepresentation was material." *Scottsdale Ins. Co. v. Priscilla Properties, LLC*, 254 F. Supp. 3d 476, 481 (E.D.N.Y. 2017).

7

Here, Union Mutual contends that the Renewal Policies should be rescinded because the renewal applications materially misrepresented that the Belmont Property had no outstanding HPD Class C violations. Defendant opposes summary judgment on three grounds: (a) that Moskovics never signed the renewal applications and therefore made no misrepresentations; (b) any misrepresentation as to the HPD Violations was not material; and (c) the term "Preliminary Application Questions" is ambiguous. Viewing all factual ambiguities and permissible inferences in the light most favorable to Moskovics, the Court finds that plaintiff is entitled as a matter of law to a declaration that the Renewal Policies are void *ab initio* pursuant to New York Insurance Law § 3105.

### A.   *Misrepresentation*

Under New York insurance law, a "misrepresentation is a false representation." N.Y. Ins. Law § 3105(a). Misrepresentations therefore "encompass[] both false affirmative statements and the failure to disclose" a fact where an insured has a duty to do so. *Scottsdale Ins. Co.*, 254 F. Supp. 3d at 481. An insurance applicant has a duty to "provide truthful and comprehensive answers to the questions asked in connection with his or her insurance application(s)." *Id.* Indeed, a "failure to disclose is as much a misrepresentation as a false affirmative statement." *John Hancock Life Ins. Co.*, 553 F. Supp. 2d at 236. The insurer, on the other hand, "is not required to verify or investigate information provided by an insured." *Id.* at 239.

Plaintiff contends that defendant made misrepresentations during each policy renewal from 2019 to 2022 by failing to disclose the HPD Violations. Mot. 12–13. Defendant counters that plaintiff automatically renewed the Policies without requiring Moskovics to submit or sign a renewal application. Opp'n 8–9. For the reasons stated

8

below, the Court finds no material factual disputes as to defendant's misrepresentation of the HPD Violations.

All of the insurance policies, including the initial and renewal applications, issued to Moskovics stated that he had answered the HPD Question in the negative and was under a contractual obligation to notify plaintiff of any changes. For example, the initial March 2017 application, which Moskovics admits he signed, required defendant to "notify the insurer in writing of any change in the information contained herein upon renewal or annually, whichever is sooner. Failure to comply may result in rescission of your policy." 56.1 Statement ¶ 16. It is undisputed that defendant did not notify Roundhill, Union Mutual, or Silberstein of the HPD Violations. 56.1 Statement ¶ 27; Moskovics Dep. Tr. 58:8–16.

Although defendant contends that he only signed the application for the Initial Policy, Opp'n 8–9, each renewal application sent from Roundhill to Silberstein included a "signature page" on which Moskovics' electronic signature appeared. 2019 App. 6, ECF No. 32-7; 2020 App. 6, ECF No. 32-8; 2021 App. 6, ECF No. 32-9 (each, a "Renewal Signature Page" and together, the "Signature Pages"). Moskovics does not argue that the electronic signature on the Signature Pages is fraudulent or otherwise void. Nor does he contend that Silberstein did not have the authority to bind defendant with respect to the renewal applications. *See 866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-cv-003678, 2017 WL 4444334, at *4 n.3 (S.D.N.Y. Oct. 3, 2017) (noting that "the onus for any mistakes or omissions committed by the broker should fall on the shoulders of the [insured], not" his broker, especially where the insured seeks "to enforce the very insurance contract that the application generated"). Indeed, Moskovics has failed to present any evidence by which a reasonable jury could find that he did not assent to the

9

renewal applications. His conclusory denial, *see* Opp'n 8–9, is simply inadequate to overcome a Rule 56 motion.

Furthermore, each Renewal Signature Page included a certification stating that "by making a payment of premium on this policy (or by authorizing my insurance agent to do so), I validate and re-sign the following documents with the electronic signature used to bind the prior years' policy," and that "I understand and agree that by making a premium payment (or by authorizing my insurance agent to do so), I am signing these documents and submitting them to Roundhill Express LLC with the intent to induce them to issue me a policy of insurance." 2019 App. 6; 2020 App. 6; 2021 App. 6. Attached to each of these Signature Pages is an Application for Commercial Insurance with all Preliminary Application Questions answered in the negative. 2019 App. 1–2; 2020 App. 1–2; 2021 App. 1–2. Plaintiff contends that defendant made payments of the policy premiums, and thus re-signed and submitted the renewal applications annually. Mot. 17–18. Defendant does not dispute that he paid the premiums. *See generally* Opp'n. Plaintiff also points out that each renewal application sent to Silberstein listed a policy effective date of roughly two months in the future, providing Silberstein and Moskovics an opportunity to review and certify the information on the application prior to its effective date. *See* Mot. 16; 56.1 Statement ¶ 22; Signature Pages (late January or early February applications listing effective dates in late March). Defendant does not dispute that he was provided an opportunity to review the applications other than to repeat his contention that the Renewal Policies were "automatically renewed." *See* 56.1 Statement ¶ 22; *see generally* Opp'n.

Nor does Moskovics' contention that he recently learned of the HPD Violations raise a factual dispute.[5] That is because, "even if innocent[ly] or unintentional[ly]," his renewal applications misrepresented to plaintiff that there existed no HPD Violations. *See Nabatov*, 164 N.Y.S.3d at 670. Moreover, the initial application put him on notice that he had a continuing contractual obligation to inform plaintiff of any changes to the information provided in March 2017. In short, defendant has provided no evidence upon which a jury could find that his failure to disclose the HPD Violations on the renewal applications was anything but a factual misrepresentation pursuant to New York insurance law.

Plaintiff has established a lack of genuine dispute as to whether Moskovics signed the renewal applications, to which defendant has failed to carry his burden to point to evidence to the contrary. Accordingly, the Court finds that defendant's answers to the HPD Question for each Policy renewal constituted a misrepresentation pursuant to New York Insurance Law § 3105(a).

### B. Materiality

A misrepresentation is material under New York law if it "would have led to a refusal by the insurer to" provide the policy. N.Y. Ins. Law § 3105(b). That is, "materiality is measured by whether the insurer was induced by the insured's statements to issue a policy that it would not have otherwise issued." *Scottsdale Ins. Co.*, 254 F. Supp. 3d at 481.

---

[5] Defendant contends that plaintiff has failed to offer admissible evidence establishing the existence of the HPD violations. Opp'n 10. However, defendant does not dispute the existence of the HPD violations. *See* 56.1 Statement ¶ 21 (failing to object to the factual content of the statement). Moreover, this argument is without merit as the Court may accept evidence in a form not admissible at trial so long as its content could be "presented in admissible form at trial." *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017).

11

The materiality of a misrepresentation on an insurance policy application is "generally a question of fact for the jury." *Barkan v. New York Sch. Ins. Reciprocal*, 886 N.Y.S.2d 414, 418 (2d Dep't 2009). However, "where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Scottsdale Ins. Co.*, 254 F. Supp. 3d at 482. For example, an insurer can "establish materiality as a matter of law" by providing "documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application." *Barkan*, 886 N.Y.S.2d at 418–19. For the reasons stated below, plaintiff has met its burden to establish the absence of material factual disputes regarding whether or not the Renewal Policies would have issued had defendant answered "Yes" to the HPD Question.

In support of its Motion, plaintiff submitted two uncontested affidavits from Roundhill president James Lambert along with the Underwriting Guidelines. Specifically, Lambert explained that an affirmative answer to the HPD Question "will block a policy quote from issuing." Lambert Decl. ¶¶ 19–20. *See also* 56.1 Statement ¶ 7; Lambert Dep. Tr. 20:13–22:25. He then affirmed that "if Moskovics had provided Roundhill and Union Mutual with the true fact that there were outstanding HPD Class C violations at the Premises, Union Mutual would have never issued the policies that it issued to Moskovics." Lambert Decl. ¶ 12; *see also* 56.1 Statement ¶ 29. This evidentiary pairing of the relevant underwriting guidelines and an affidavit explaining the application thereof has been found sufficient to support materiality as a matter of law. *Nabatov*, 164 N.Y.S.3d at 670 (finding an "affidavit from [insurance company's] underwriter, along with Union Mutual's Underwriting Guidelines" sufficient to support summary judgment for

12

insurance company); *see also 2900 Stillwell Ave., LLC v. U.S. Underwriters Ins. Co.*, 98 N.Y.S.3d 877, 878 (2d Dep't 2019); *Konstantakopoulos v. Union Mut. Fire Ins. Co.*, 144 N.Y.S.3d 346, 347 (1st Dep't 2021).

Moreover, plaintiff explained that the software powering Roundhill's online platform is designed to automatically reject an application containing an "unacceptable risk" as defined by the Underwriting Guidelines. 56.1 Statement ¶¶ 2–5, Lambert Decl. ¶¶ 13–14, 16. This "automation interface" with "code-based reasons" for rejection of an insurance application has been found to "offer[] even stronger evidence of materiality" than the Underwriting Guidelines themselves. *Union Mut. Fire Ins. Co. v. OHR Makif LLC*, No. 22-cv-02025, 2023 WL 5576877, at *4 (S.D.N.Y. Aug. 29, 2023). Accordingly, the Court finds that plaintiff has met its initial burden to establish the absence of a genuine and material factual dispute as to the materiality of the HPD Question.

Defendant does not dispute that affirmative answers to the HPD Questions will block a policy from issuing in the first instance. Instead, defendant challenges materiality on the basis that the Preliminary Application Questions do not act as a complete bar to coverage. Opp'n 9. Specifically, Moskovics contends that the HPD Question is not material because there are "work-arounds" and plaintiff exercises "discretion" in assessing whether the unacceptable risks identified by the Preliminary Application Questions will bar coverage. Opp'n 9. According to defendant, when an applicant answers yes to any preliminary questions, "a line of communication" opens to "determine whether or not the condition can be cured to allow" coverage. Opp'n 9. To support this contention, he points to Lambert's testimony regarding applications that are denied based on an affirmative answer to the Preliminary Application Question regarding whether a property has a swimming pool. Opp'n 9. Lambert testified that Roundhill "will advise" the rejected

13

applicant that "if they can remove the pool and send us photographs showing that the pool has been removed, the risk will then be considered within the guidelines and so we can do coverage." Lambert Dep. Tr. 34:4–10.

This does not contradict Lambert's testimony as to the result of affirmative answers to the Preliminary Application Questions or how the Roundhill automation interface operates. Contrary to defendant's contention, Lambert did not testify that Roundhill will approve an application with a swimming pool in violation of the Underwriting Guidelines. He testified that if an applicant brings a property into conformance with the requirements of the Underwriting Guidelines—and therefore can answer "No" to any Preliminary Application Questions—Roundhill can approve the application. *See* Lambert Dep. Tr. 34:4–10. Here, that would be the equivalent of defendant answering "Yes" to the HPD Question, having his application denied, resolving all outstanding HPD violations and providing documentation thereof, and then truthfully answering "No" to the HPD Question. Defendant's assertion that "there is a mechanism upon which [he] could have obtained coverage," Opp'n 10, despite the HPD Violations and without bringing the property into compliance with the Underwriting Guidelines is therefore unsupported by the record.

Viewing the record in the light most favorable to defendant, plaintiff has established the absence of any factual disputes regarding the materiality of the HPD Question. The Court therefore finds that the HPD Question—and defendant's misrepresentations in answering it—is material as a matter of law.

   C. *Ambiguity*

  Defendant also opposes summary judgment on the basis that the term "Preliminary Application Questions" in the Underwriting Guidelines is ambiguous. Opp'n 11–12. Specifically, defendant suggests that the renewal applications do not include any definition or designation that would connect the questions bearing unacceptable risks in the Underwriting Guidelines with the questions presented on the renewal applications. *See* Opp'n 11–12. To the contrary, the parties' agreement unambiguously identifies the Preliminary Application Questions by express reference to the Roundhill website. *See* Underwriting Guidelines 2.

  Summary judgment is inappropriate where a relevant contract term is ambiguous. *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) ("[O]nly where the court finds that the terms are unambiguous, or where no extrinsic evidence exists, may it properly grant summary judgment to one of the parties."). Pursuant to New York law, a contract term is ambiguous if the terms or any inferences based on those terms "suggest more than one meaning when viewed objectively by a reasonably intelligent person" based on industry practice and the contract as a whole. *Id.* Only the "existence of two *reasonable* interpretations" makes a term ambiguous. *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016) (emphasis in original). A challenge to an insurer's claim for rescission requires the insured to come forward with an additional reasonable interpretation of the allegedly ambiguous term "and explain why its conduct reasonably falls within it." *OHR Makif LLC*, 2023 WL 5576877, at *5 (citing *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).

15

Furthermore, "contract terms and other agreements may be incorporated by cross-reference" to an outside instrument. *Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 223 (S.D.N.Y. 2024) (citing *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 104 (2d Cir. 2022)). However, any incorporation cannot itself be ambiguous. Whether a cross-reference introduces any ambiguity into the contract is a matter of law "and does not require a trial to discard a contrary interpretation urged by one party." *Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 715–16 (2d Cir. 2017) (summary order). When "determining whether a document has been incorporated by reference," courts assess "(1) whether the allegedly incorporated document is expressly identified . . . beyond all reasonable doubt, and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract." *Silver*, 724 F. Supp. 3d at 223.

The Underwriting Guidelines list several "Unacceptable Risks," including "Risks answering affirmatively to any Preliminary Application Questions listed on the Roundhill Express Website from time to time." Underwriting Guidelines 2. Defendant argues that plaintiff has not "identified" a document that explains or delineates which questions are considered Preliminary Application Questions. Opp'n 12. In response, plaintiff offered a declaration affirming that between March 2017 and February 2021, the Roundhill website included a page "expressly labelled as 'Preliminary Application Questions.'" Second Lambert Decl. ¶ 10, ECF No. 34-1; *see also* ECF No. 34-2 (screenshot of Roundhill website). Plaintiff further avers that this list "remained unchanged" between March 2017 and February 2021. Second Lambert Decl. ¶ 10. Defendant makes no argument that either the reference to the Roundhill website in the Underwriting Guidelines is itself ambiguous or that referring to the website to define the Preliminary Application Questions is

16

inadequate to incorporate that term into the agreement. *See* Opp'n 11. Nor does the Court so find. *See, e.g., Starke v. United Parcel Serv., Inc.*, 513 F. App'x 87, 89 (2d Cir. 2013) (summary order) (finding that "[a]lthough . . . the contract includes 'the description of UPS services at ups.com,' nothing in those additional terms suffices to render the contract ambiguous"). To the contrary, the Underwriting Guidelines demonstrate a clear and express intent to incorporate by reference "any Preliminary Application Questions listed on the Roundhill Express Website from time to time." Underwriting Guidelines 2.

Importantly, defendant provides no alternative—let alone a reasonable alternative—interpretation of the term "Preliminary Application Questions." *See* Opp'n 12. He does not indicate how else reference to these questions could be objectively understood. Nor does defendant suggest any other questions appearing on the original or renewal applications that could reasonably be considered Preliminary Application Questions other than the set of questions that includes the HPD Question. In other words, defendant has failed to raise the possibility that the parties intended any other interpretation of the term. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) ("A fundamental precept of contract law is that agreements are to be construed in accordance with the parties' intent."); *Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014) ("When interpreting a contract, our primary objective is to give effect to the intent of the parties as revealed by the language of their agreement."). Accordingly, the Court finds no ambiguity as to the meaning of the term "Preliminary Application Questions" as a matter of law.

\* \* \*

Plaintiff has carried its burden to demonstrate the absence of any material and genuine factual disputes regarding defendant's affirmative answers to the HPD Question.

17

Defendant has failed to provide any evidence by which a jury could find that his answers were anything but material representations, or that the term "Preliminary Application Questions" is ambiguous. Accordingly, plaintiff is entitled to judgment as a matter of law that the Renewal Policies issued to Moskovics for March 2019–2021 are void *ab initio* pursuant to Insurance Law § 3105.

## II. Duties to Defend & Indemnify

Union Mutual also asks this Court for a declaration that it need not defend or indemnify defendant Moskovics pursuant to the Renewal Policies and that it may withdraw its defense of Moskovics in the Underlying Action. However, plaintiff makes no argument regarding these duties separate from its request for declarations. Accordingly, the Court declines to rule on this question not presently before it.

An insurer's duty to defend is distinct from its duty to indemnify. The duty to defend is "exceedingly broad." *Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co.*, 957 F. Supp. 2d 215, 225 (E.D.N.Y. 2013) (citing *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). If, however, "there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify its insured under any policy provision," the insurer is relieved of this duty. *Jewish Cmty. Ctr.*, 957 F. Supp. 2d at 225. While the duty to defend "is measured against the allegations of pleadings," the duty to indemnify "is determined by the actual basis for the insured's liability to a third person." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (citing *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 89 (2d Cir. 2023) (explaining that the duty to indemnify "is triggered by a determination of the insured's liability to the third party").

As discussed *supra*, the Court has determined that plaintiff is entitled as a matter of law to a declaration that the Renewal Policies are void. Plaintiff provides no indication why a declaration as to its duty to defend or indemnify would be necessary in light of the fact that a void agreement restores plaintiff to "the same position" it was "in prior to the making of the contract." *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 413 (S.D.N.Y. 2016). Nor does plaintiff provide any basis on which the Court could determine the contractual duties it owes based on a voided contract. *Cf. In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (concluding that "*[u]ntil the issue of rescission is adjudicated*, a contract of insurance remains in effect and the duty to pay defense costs is enforceable") (emphasis added).

Accordingly, plaintiff has failed to demonstrate that it is entitled to judgment as a matter of law declaring that it has no obligation to defend or indemnify Moskovics, or anyone else, for the Underlying Incident, the Underlying Action, or any other occurrence, claim, or suit under the Renewal Policies issued to Moskovics, or that it may withdraw from the defense of Moskovics in the Underlying Action. *See* Mot 9. The Court notes, however, that "any obligations . . . under or arising from" the voided contract "are hereby extinguished, as a matter of law[.]" *Scottsdale Ins. Co. v. Priscilla Properties, LLC*, 254 F. Supp. 3d 476, 485 (E.D.N.Y. 2017).

## CONCLUSION

For the reasons stated above, the Motion for summary judgment in favor of plaintiff is **GRANTED in part**, **DENIED in part**. Accordingly, the Court **DECLARES** that the Renewal Policies issued to Moskovics for March 2019–2021 are void *ab initio* pursuant to Insurance Law § 3105. In accordance with the Court's Individual Practice

Rule IV.A, the parties shall file a proposed joint pretrial order or otherwise indicate how plaintiff wishes to proceed with any remaining claims by February 27, 2025.

**SO ORDERED.**

                                                                                      */s/ Natasha C. Merle*
                                                                                    NATASHA C. MERLE
                                                                                    United States District Judge

Dated:       January 28, 2025
                Brooklyn, New York